MARTHA A. POUND, Administratrix, v. JAMES H. POUND.[1]

May 19, 1896.

Nos. 9779—(33).

**Conversion—Sale—Verdict Not Sustained.**
Evidence considered, and *held* that it does not sustain the verdict.

**Order Reversed.**
Order reversed, and a new trial granted.

Appeal by defendant from an order of the district court for Ramsey county, Charles D. Kerr, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $5,000.   Reversed.

*Young & Lightner* and *James H. Pound*, for appellant.
*Stevens, O'Brien, Cole & Albrecht*, for respondent.

START, C. J.   The plaintiff is the administratrix of the estate of her husband, George C. Pound, deceased, and, as such, brought this action against the defendant, James H. Pound, the father of deceased, for the conversion of a job-printing plant.   The complaint charges that George C. Pound, on January 25, 1894, the day of his death, was the owner, and entitled to the possession, of the plant, and that the defendant, on March 15, 1894, converted the same to his own use.   The answer denies that George C. Pound was the owner of, or entitled to the possession of, the personal property in question, and affirmatively alleges that the defendant is the absolute owner thereof.   The plaintiff had a verdict for $5,000, and from an order denying his motion for a new trial, the defendant appealed.

The most important of the defendant's assignments of error are involved in the question, is the verdict sustained by the evidence? Our conclusion is, after a careful consideration of the record, that

1 Reported in 67 N. W. 200.

the question must be answered in the negative. The trial court, in denying the motion for a new trial, said, in reference to this question: "To establish this contention, the plaintiff relies mainly upon circumstances and the declaration of plaintiff's decedent after the sale. It has been matter of grave doubt in my mind whether these are sufficient to justify the verdict, but, giving wide latitude to the province of the jury, and inasmuch as I think substantial justice has been done, I have concluded to let the verdict stand." It would seem, from this statement, that the learned trial judge, in reaching his conclusion, gave to the declarations of George C. Pound an importance they were not entitled to. We shall refer to them as we proceed.

It is important, at the outset, to keep in mind just what the issues were. This action is not one to recover property transferred by the deceased to defraud his creditors, or in fraud of the marital rights of his wife, or for an accounting for property transferred as security, but the plaintiff bases her right to recover upon the proposition that her intestate was the absolute owner of the property at the date of his death. The trial judge stated correctly the nature of the plaintiff's claim to the jury in these words: "The plaintiff has the same rights as George C. Pound himself would have,—no more, and no less,—and cannot recover in this case unless her intestate, George C. Pound, could have recovered, had he himself brought suit." The practical question then is, would the evidence in this case support a verdict in favor of George C. Pound if he was alive, and had brought this action. Keeping in mind this practical form of the question, let us briefly examine the evidence.

The undisputed evidence tends to show that in the latter part of March, 1890, George C. Pound was the owner of the property in question, subject to a mortgage to his father, the defendant, for $2,000 and interest. His total indebtedness to his father and brother, including interest, was $3,200. He was also owing for a printing press $1,800, and had other debts. He was at this time having trouble with his wife. Such being the situation, he telegraphed to his father, who lived at Detroit, Michigan, that he was in trouble, and asked him to come to St. Paul. The defendant came, and such negotiations were had between them that on March 27, 1890, the son transferred the plant to his father by a bill of sale,

for the consideration of $6,000, as recited therein. By the terms of the sale the father assumed and agreed to pay all of the indebtedness of the business, and he executed to the son an agreement, stating that the consideration of the purchase was $6,000, and the debts $5,878.96, and agreed to pay the debts, and, when the amounts thereof were definitely ascertained, to pay the balance in cash. A further agreement was executed between them, whereby the son agreed to carry on the business for the father, as manager, under the name of the "Pound Publishing Company," at a salary of $25 per week. The bank account, the insurance, and the account books of the business were changed from "George C. Pound" to "Pound Publishing Co., James H. Pound, Proprietor." Thereafter all business and accounts were with the Pound Publishing Company. Monthly statements of the business were sent to the father for about one year, when they were discontinued, at his request. There was further evidence tending to show that George C. Pound repeatedly stated, after the bill of sale was given, that his father was the Pound Publishing Company, and owned the business. The defendant testified that the sale was an absolute one, and that he paid the debts of the business.

The claim of the plaintiff is that there was in fact no sale; that the title to the property never passed, and that it was never intended by the parties that the title should pass; that the whole transaction was merely colorable. The evidence relied on by the plaintiff to sustain this claim are the circumstances under which the bill of sale and change in the business were made,—such as the formalities, the publicity of the transaction, and the care taken in these respects, while there was no careful investigation by the defendant as to the amount and value of the plant before the bill of sale was made; also the inadequate consideration for the purchase. If the question here was whether the property was transferred to defraud creditors, or as security for the amount due from the son to the father, the surplus to be held in trust for the son, such circumstances would be entitled to much probative force; but, upon the simple question whether there was ever any transfer of the legal title to the property for any purpose, no matter what, such circumstances fall very far short of being sufficient to set aside the formal written transfer of the property, and the other evi-

dence on the part of the defendant. Suppose this action had been between George C. Pound, as plaintiff, against his father, to recover the value of this property, on the ground that he never transferred the title, and the evidence was the same as in this case, would any court sustain a verdict in favor of the plaintiff?

But certain direct evidence was given on the trial to which much importance is attached by the plaintiff. It appears that, at or about the time the bill of sale and the change in the business were made, the son assigned his life insurance policy to his father, who, after the son's death, collected $3,000 thereon. This evidence was received over the objections and exceptions of the defendant. If the plaintiff's case had been tried on the basis that there was in fact a transfer of the property to the father to secure him, and to hold any surplus for the son, and that the father had been paid, this would have been important evidence. But the plaintiff's case, from the commencement until the evidence was closed, was tried on the basis that the title of the property never passed to the defendant for any purpose, or, in other words, that no sale in fact ever took place. The fact of the gift or transfer of the insurance policy, payable at the son's death, could have little, if any, tendency to show that no title passed under the bill of sale. It also appears that on July 12, 1890, the son and his wife, the plaintiff, joined in a deed of certain real estate to the defendant, which was subject to a mortgage of $3,000, which the defendant has paid. The plaintiff, against the objection of the defendant, was permitted to show the value of the lot. This transaction occurred some three months after the bill of sale was made. The plaintiff joined in the deed, and there is no claim that the title to the lot did not pass by the deed; hence, the transaction has no relevancy to the question whether the bill of sale was a fable, or whether it passed the title to the printing plant for some purpose.

Certain declarations of George C. Pound, made after the making of the bill of sale, were received in evidence. They were to the effect that his reason for transferring the property to his father was so that, if he happened to die, his wife should not have any money out of his estate, and that he was the owner, the same as before. If the action was between the father and son, it is clear that the declarations of the latter in his own favor would not be

admissible, and it is probable that they are equally incompetent in this action, wherein the plaintiff claims in the right of the son. The evidence, however, was received without objection. Accepting the declarations as evidence in this case, they do not tend to support the plaintiff's claim that no title passed by the bill of sale. This evidence, treating the declarations as such, tends to support the theory that the property was actually transferred to the father, by the bill of sale, for the purpose of securing him, and to enable him to hold the surplus in trust for the son, so as to place the surplus beyond the reach of his wife. The very reason assigned by the son why he transferred the property to his father implies that he had vested the title in his father by the bill of sale. The further declaration that he was now as much the owner of the property as before is not inconsistent with the idea that there was an actual transfer of the property as security for his father, and in trust as to the surplus for the son. Before the transfer, his father had a valid chattel mortgage on the property, and the son only had a right of redemption. If the property was transferred to the father in trust to pay his own claim, and to hold the surplus for his son, the latter, in equity, would still be as much the owner of the property as before the transfer. In either case, the property was subject to the claim of the father.

Our conclusion is that, if the verdict in favor of the plaintiff is to rest upon the claim of the plaintiff that the legal title to the property never passed to the father by the bill of sale for any purpose, it is so manifestly against the weight of evidence that it cannot be sustained.

It is claimed by the respondent that the verdict may be sustained, upon the theory that the bill of sale was intended as a security to the defendant for the amount due him, and that he has been paid, and that the surplus equals at least $5,000,—the amount of the verdict. Conceding that, under the allegations of the complaint, the plaintiff might have shown that the property was transferred to the defendant as a security, and that all indebtedness for which it was held had been satisfied (see Jones v. Rahilly, 16 Minn. 283 [320]), still the burden was upon her to show this.

It is impossible for any court or jury to say from the evidence whether the defendant's claims against the property have been

paid, if he held the property as security. But the conclusive answer to this view of the case is that the action was not tried on this theory, but on the claim that nothing ever passed by the bill of sale. The defendant never consented to try any other issue, and he excepted to that part of the charge in which the jury were substantially told that, if the property was held as security, the plaintiff would be entitled to the value of the property over and above the amount due the defendant. It is true the exception was not lawyer-like in form, but it fairly advised the court as to the part of the charge excepted to. But, as already suggested, the plaintiff, down to the close of the evidence, stood on the proposition that George C. Pound was the absolute owner of the property, and no claim was made that the defendant held the property as security. The evidence as to the transfer of the insurance policy and deed of the lot was not received for the purpose of showing that the defendant's claim was paid. On this subject the court instructed the jury as follows: "I charge you that the transfer or change of this insurance, whatever it was, as the evidence shows, and the sale of this lot to the defendant, has no bearing or significance in this case, except as circumstances which may or not, as you may look upon them, affect the question as to the real character or the probabilities of this transaction; and their significance and weight in that regard, if any, it is your exclusive province to determine."

Equally untenable is the defendant's claim that he was a mortgagee in possession, and therefore there was no conversion, and hence he was entitled to have the jury instructed to return a verdict in his favor. Neither in his pleadings nor proof did he make any such claim. Each party stood upon the claim of absolute title to the property throughout the trial.

Order reversed, and a new trial granted.